# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| UNDERWRITERS LABORATORIES INC., ) ) ) | |
| Plaintiff, ) ) | |
| v. ) ) | No. 05 C 5509 |
| HYDROFILM L.P. and ) WATERFILM ENERGY, INC., ) ) | Judge Ronald A. Guzmán |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

This case comes before the Court on defendants Hydrofilm L.P. and Waterfilm Energy, Inc.'s motion to dismiss plaintiff Underwriter's Laboratories, Inc.'s ("UL") complaint for lack of subject matter jurisdiction, personal jurisdiction, and improper venue, pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(1), (2), and (3), or, in the alternative, to transfer the action under 28 U.S.C. §§ 1404 or 1406, or to decline to exercise its jurisdiction under the common law doctrine of *forum non conveniens*. For the reasons stated herein, the Court finds that it has subject matter jurisdiction over this action but does not have personal jurisdiction over the defendants. Accordingly, the Court grants defendants' motion to dismiss pursuant to Rule 12(b)(2) and denies the alternative motions as moot.

## Facts and Procedural Posture

The law is rich in irony; this litigation arises from UL's desire to avoid litigation. On July 25, 2005, Hydrofilm, L.P. and Waterfilm Energy, Inc. (collectively "Hydrofilm"), two New York corporations, sued UL, an Illinois corporation, in New York state court. (Compl. ¶ 10.)

Hydrofilm alleged that UL - an Illinois corporation that after evaluation and certification "lists" products that have been deemed to meet certain safety standards – has listed products that are identical to that made by Hydrofilm and already listed by UL. (Pl.'s Opp'n Defs.' Mot. Dismiss, Ex. PX1, Verified Compl. ¶ 17.) Hydrofilm asserted that in doing so UL committed patent infringement, trade dress infringement, misappropriation of trade secrets, product disparagement as well as breached UL and Hydrofilm's contract and sought treble damages under the Lanham Act, 15 U.S.C. §§ 1051 *et seq.* (Compl. ¶ 10; Pl.'s Opp'n Defs.' Mot. Dismiss, Ex. PX1, Verified Compl. ¶¶ 11-24.)

UL removed the case to the United States District Court for the Eastern District of New York, whereupon Hydrofilm filed a notice of voluntary dismissal of the claim, which the court entered. (Compl. ¶ 12.) After dismissal, Hydrofilm stated that the dismissal was not with prejudice and they intended to sue UL again. (*Id.* ¶ 13.) Fearing further litigation, UL brought this action, seeking a declaratory judgment that: (1) UL has not engaged, and is not now engaging, in unfair competition or trade dress infringement under the Lanham Act, and (2) UL has not misappropriated any of Defendants' trade secrets or otherwise violated any statutory provision or the common law. (*Id.* ¶¶ 17, 19.)

## Discussion

Defendants have moved to dismiss or transfer the case, asserting that (1) this action does not present a justiciable "case or controversy" within the meaning of Article III of the Constitution and 28 U.S.C. § 2201, which this Court treats as a motion to dismiss for lack of subject matter jurisdiction, *see Bell v. Ill. Cent. R.R. Co.*, 236 F. Supp. 2d 882, 893-94 (N.D. Ill. 2001); (2) the court lacks personal jurisdiction because defendants do not have the requisite

2

contacts with Illinois such that a federal court sitting in Illinois can enter a judgment against them; (3) venue in this Court is improper under 28 U.S.C. § 1391, and accordingly the case should be dismissed under 28 U.S.C. § 1406; and if the Court finds it has subject matter and personal jurisdiction, (4) the case should be transferred under either 28 U.S.C. § 1404 or 1406, or (5) the Court should decline to exercise jurisdiction under the common law doctrine of *forum non conveniens*.

## I. Subject Matter Jurisdiction

This Court must first determine whether there is a live "case or controversy," such that it has subject matter jurisdiction. *See Hyatt Int'l Corp. v. Coco*, 302 F.3d 707 (7th Cir. 2002). There are two kinds of Rule 12(b)(1) motions: those that attack the sufficiency of the jurisdictional allegations and those that attack the factual basis for jurisdiction. Facial attacks are subject to the same standard as motions pursuant to Rule 12(b)(6) motions; that is, the Court accepts as true all well-pleaded factual allegations of the complaint, drawing all reasonable inferences in plaintiff's favor. *United Phosphorus, Ltd. v. Angus Chem. Co.*, 322 F.3d 942, 946 (7th Cir. 2002). However, in factual attacks, like this one, the Court may consider affidavits and other evidence in deciding the motion. *Id.* In either case, the burden of proving that jurisdiction exists rests with the plaintiff. *Id.*

The Declaratory Judgment Act, 28 U.S.C. § 2201, provides that "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party." Thus, a declaratory judgment action, like any proceeding heard by a federal court, must be an actual "case or controversy" within the meaning of Article III of the U.S. Constitution. *See Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240

3

(1937) ("The [Declaratory Judgment Act] is operative only in respect to controversies which are such in the constitutional sense.").

An action meets this standard when it is "a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." *Id.* at 241. When a declaratory judgment is sought in anticipation of litigation, the threat of litigation must be "real and immediate" to create a live controversy. *Hyatt Int'l*, 302 F.3d at 712. An "apprehension" of litigation does not necessarily render a threat real and immediate, but it will do so if the apprehension is caused by the defendant's conduct. *Bell*, 236 F. Supp. 2d at 894. In determining whether such a controversy exists, the Court asks whether a controversy existed at the time of the commencement of the action. *Golden v. Zwickler*, 394 U.S. 103, 108 (1969); *see also Bell*, 236 F. Supp. 2d at 894.

Hydrofilm argues that the facts in this case do not support the conclusion that there is an actual controversy between the parties because "[t]he voluntary discontinuance of a previous lawsuit without prejudice simply does not rise to the level of establishing an actual controversy." (Defs.' Mem. Supp. Mot. Dismiss 3.) Hydrofilm dismisses UL's recital of Hydrofilm's threats as "vague allegations of oral threats to 'sue UL again.'" (*Id.*) However, Hydrofilm does not deny that such threats were made, and, as such, the Court must assume that they were. *See Md. Cas. Co.*, 312 U.S. at 273.

In *Bell v. Illinois Central Railroad Co.*, victims of a train crash threatened the plaintiffs that they would be added as defendants in pending state tort litigation, and counsel for the victims told a newspaper that plaintiffs were at least partially responsible for the crash. 236 F. Supp. 2d at 894. The *Bell* court held that these threats were sufficient to create a real and

4

immediate threat of litigation. *Id.*

As in *Bell*, UL alleges that Hydrofilm threatened to sue it. (Compl. ¶¶ 9, 14.) Even more compelling is the fact that Hydrofilm had already sued UL in New York based on this same controversy. The Court finds that Hydrofilm's prior litigation against UL coupled with Hydrofilm's verbal threats of future litigation created a real and immediate threat of litigation.

Moreover, this case is paradigmatic of declaratory judgment actions: a plaintiff sues to declare that his continuing business practices do not violate the rights of the defendant, so that the plaintiff will know whether or not, by continuing his business practices, he exposes himself to serious liability. *See Hyatt Int'l*, 302 F.3d at 711. In the instant case, UL is suing for a declaration that, among other things, it is not continuing to contribute to the violation of defendants' patent or violate various other federal and state laws. Thus, without redress in the form of a declaratory judgment, UL will be faced with a Hobson's choice: either UL could cease listing defendants' competitors' products (thereby potentially breaching UL's agreements with defendants' competitors) or UL could continue such listings and face the real and immediate risk of litigation with defendants. Declaratory judgments exists precisely to prevent parties from having to face such a choice.

Having found this a justiciable case, this Court still has discretion to deny declaratory relief. *See Hyatt*, 302 F.3d at 711 (noting that a declaratory judgment is "discretionary in a strong sense" because of its potential for abuse). This is so because it gives the declaratory judgment plaintiff the ability to seize the forum from the "natural plaintiff" (*i.e.*, the person who would naturally bring a suit for damages). *Id.*

In its discretion, the Court declines to deny declaratory relief from the outset, as requested by Hydrofilm. This case is quintessentially appropriate for declaratory relief, in that

5

UL risks having to give up an ostensibly legal right to engage in a legitimate business practice or face time-consuming and expensive litigation without a declaration of its rights. Moreover, if this Court finds that UL has unfairly "seized" the decision of where to try this action from Hydrofilm, it has authority to transfer the action under 28 U.S.C. §§ 1404 and 1406. Thus, this Court has, and chooses to exercise, subject matter jurisdiction over this action.

## II. Personal Jurisdiction

The plaintiff bears the burden of proving the existence of personal jurisdiction by a preponderance of the evidence. *See RAR, Inc. v. Turner Diesel, Ltd.*, 107 F.3d 1272, 1276 (7th Cir. 1997). In a diversity suit, personal jurisdiction is only proper if an Illinois court would have jurisdiction. *Dehmlow v. Austin Fireworks*, 963 F.2d 941, 945 (7th Cir. 1992).

Two inquiries are necessary to determine whether an Illinois court may exercise personal jurisdiction over a nonresident defendant: (1) whether Illinois' long-arm statute permits *in personam* jurisdiction and (2) whether the assertion of jurisdiction under the long-arm statute would be inconsistent with due process. *Daniel J. Hartwig Assocs., Inc. v. Kanner*, 913 F.2d 1213, 1216 (7th Cir. 1990). Under Illinois' long-arm statute, Illinois courts may exercise jurisdiction on "any other basis now or hereafter permitted by the Illinois Constitution and the Constitution of the United States." 735 ILL. COMP. STAT. 5/2-209(c). "[T]here is no operative difference between the limits imposed by the Illinois Constitution and the federal limitations on personal jurisdiction." *Hyatt Int'l*, 302 F.3d at 715.

When a motion to dismiss is to be decided solely on written materials, the plaintiff need only make a *prima facie* case for personal jurisdiction. *Neiman v. Rudolf Wolff & Co., Ltd.*, 619 F.2d 1189, 1190 (7th Cir. 1980). In doing so, "all well-pleaded jurisdictional allegations in the

complaint are accepted as true unless controverted by affidavit." *Travelers Cas. & Sur. Co. v. Interclaim (Bermuda) Ltd.*, 304 F. Supp. 2d 1018, 1021 (N.D. Ill. 2004). "Any conflicts in the pleadings and affidavits are to be resolved in the plaintiff's favor, but the court accepts as true any facts contained in the defendants' affidavits that remain unrefuted by the plaintiffs." *Interlease Aviation Investors II (Aloha) L.L.C. v. Vanguard Airlines, Inc.*, 262 F. Supp. 2d 898, 905 (N.D. Ill. 2003); *see also RAR, Inc.*, 107 F.3d at 1275.

The Supreme Court has recognized two types of personal jurisdiction: general and specific. *Helicopteros Nacionales de Colombia v. Hall*, 466 U.S. 408, 414-15 nn.8-9 (1984). The Court addresses each in turn.

## A. General Jurisdiction

"[G]eneral jurisdiction allows a defendant to be sued in the forum regardless of the subject matter of the litigation." *Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 787 (7th Cir. 2003). It is permitted "only where the defendant has continuous and systematic general business contacts with the forum." *Id.* (quotations omitted). "Those contacts must be so extensive as to make it 'fundamentally fair to require [defendant] to answer in any [Illinois] court in *any* litigation arising out of *any* transaction or occurrence taking place *anywhere* in the world.'" *Travelers Cas.*, 304 F. Supp. 2d at 1025 (quoting *Purdue Research*, 338 F.3d at 787). Several factors are considered in making this analysis:

> (1) whether and to what extent the defendant conducts business in the forum state; (2) whether the defendant maintains an office or employees within the forum state; (3) whether the defendant sends agents into the forum state to conduct business; (4) whether the defendant advertises or solicits business in the forum state; and (5) whether the defendant has designated an agent for service of process in the forum state.

7

*Interlease Aviation Investors*, 262 F. Supp. 2d at 906-07. General jurisdiction is a demanding standard that is "considerably more stringent than that required for specific jurisdiction." *Purdue Research*, 338 F.3d at 787; *see Griffith v. Wood Bros.*, No. 04 C 3118, 2004 WL 2418296, at *8 (N.D. Ill. Oct. 27, 2004).

Given these principles, this Court lacks general jurisdiction over Hydrofilm. The only contacts with the forum state that could support general jurisdiction are Hydrofilm's two contracts with UL that state they are "made at Northbrook, Illinois," and Hydrofilm's maintenance of an interactive website through which it sells its product. The contracts, in and of themselves, cannot support general jurisdiction. *See Grand Vehicle Workd Holdings Corp. v. Frey*, No. 03 C 7498, 2004 WL 742085, at *2 n.3 (N.D. Ill. Apr. 6, 2004) (stating contracts at issue did not establish general jurisdiction was proper). They are only two contacts with the forum State. There is no evidence that they are a part of a larger effort by Hydrofilm to engage in continuous and systematic general business contacts with Illinois. Indeed, there is no evidence that Hydrofilm has ever contracted with another Illinois corporation, or that they have ever sold any product to an Illinois consumer.

The mere maintenance of an interactive website does not cure this fundamental defect. As the Fifth Circuit noted in *Revell v. Lidov*, an interactive website accessible from the forum state allows, in some sense, for its operator to be present in the forum state at all times. 317 F.3d 467, 471 (5th Cir. 2002). UL clings to this fact as the basis for its claim of general jurisdiction, stating that Hydrofilm, by operating the website, has "purposefully availed [themselves] of the privilege of conducting activities in Illinois, and therefore, should reasonably anticipate being haled into court in Illinois." (Pl.'s Opp'n Defs.' Mot. Dismiss at 9-10.)

To support this proposition, UL relies upon two cases decided in this district, *School*

*Stuff, Inc. v. School Stuff, Inc.*, No. 00 C 5593, 2001 WL 558050 (N.D. Ill. May 21, 2001), and *Publications International, Ltd. v. Burke/Triolo, Inc.* 121 F. Supp. 2d 1178 (N.D. Ill. 2000). Such reliance is misplaced.

In *School Stuff*, the court expressly disclaimed general personal jurisdiction over the defendant. 2001 WL 558050, at *2 ("[G]eneral jurisdiction cannot be established over the defendant since defendant's activities in this forum are not continuous and systematic."). Thus, School Stuff does not support UL's position that general jurisdiction exists.

In *Publications International*, the court found it had general jurisdiction over an out-of-state defendant because the defendant did more than merely maintain an interactive website. 121 F. Supp. 2d at 1183. In particular, the Court based its holding on the fact that the defendant had actually done business with customers in Illinois, and the defendant had a sales representative in Illinois, evincing its desire to maintain continuous contacts with Illinois. *Id.*

There are no such contacts in this case. Indeed, if this Court were to accept UL's proposition, then the maintenance of an interactive website would make general jurisdiction proper over *any defendant* in *any state* for *any cause of action*.

Not surprisingly, circuits that have addressed the effect the maintenance of an interactive website has on general personal jurisdiction have not embraced the concept that the mere advent of the internet has virtually nationalized all litigation. *See, e.g., Revel*, 317 F.3d at 470; *Bird v. Parsons*, 289 F.3d 865, 874 (6th Cir. 2002). In *Revell*, the Fifth Circuit found that a Texas court lacked general jurisdiction over Columbia University, upon whose interactive website an individual had published an allegedly defamatory article about plaintiff, a Texas resident. 317 F.3d at 471. This was so despite the fact that, through this website, Columbia University had received over 20 subscriptions to one of its publications from Texas residents. *Id.* In *Bird v.*

9

*Parsons*, the Sixth Circuit held that Ohio courts could not exercise general jurisdiction over a defendant who maintained a website through which he sold domain names, even after a showing that over 4,000 Ohio residents had used this service. 289 F.3d at 874. If such contacts, combined with an interactive website, are not enough to support general jurisdiction, then clearly the contacts here, with nothing in the record to suggest that Hydrofilm has ever sold anything to any Illinois resident, cannot do so. Hydrofilm has not had the type of continuous and systematic business contacts with Illinois to warrant the exercise of general jurisdiction.

## B. Specific Jurisdiction

"Specific jurisdiction refers to jurisdiction over a defendant in a suit arising out of or related to the defendant's contacts with the forum." *RAR, Inc.*, 107 F.3d at 1277 (quotation omitted). To be subjected to the jurisdiction of a foreign forum, a defendant need only have sufficient "minimum contacts with it such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quotation omitted). "Jurisdiction is proper . . . where the contacts proximately result from actions by the defendant *himself* that create a substantial connection with the forum State." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) (quotation omitted). Courts look to the defendant's "conduct and connection with the forum State" to determine if he should "reasonably anticipate being haled into court there." *World Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).

UL asserts that specific jurisdiction is proper because "[d]efendants have done business with UL in Illinois, as evidenced by their agreements with UL." (Pl.'s Opp'n Defs.' Mot. Dismiss 9.) Defendants say the contracts do not evidence the necessary contacts because they

10

were executed by defendants' predecessors. (Defs.' Reply Mot. Dismiss 4.) However, a predecessor corporation's contracts will be imputed to its successor if the successor is a "mere continuation" of its predecessor, such that the predecessor and successor corporations are practically the same entity. *See Purdue Research*, 338 F.3d at 783-84. Given that defendants, in their New York action, conceded that they differ from their predecessors in name only (*see* Pl.'s Opp'n Defs.' Mot. Dismiss, Ex. PX1, Verified Compl. ¶ 11 (stating that defendants were earlier "known as Smart Drain, Inc.")), the Court finds that defendants are a "mere continuation" of their predecessors such that the contracts negotiated by the predecessors will be imputed to defendants for purposes of determining personal jurisdiction.

Thus, Hydrofilm's only contacts with Illinois are: (1) Hydrofilm's two contracts with UL that state they were made in Illinois; and (2) Hydrofilm's maintenance of an interactive website through which Illinois residents could potentially buy its product. Of these, only the former will be considered. The website run by defendants is irrelevant, for none of the claims in this action are based on its use by UL, defendants, or anyone else.

"[A]n out-of-state party's contract with an in-state party is alone not enough to establish the requisite minimum contacts." *RAR, Inc.*, 107 F.3d at 1277. "'[P]rior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing' must indicate the purposeful availment that makes litigating in the forum state foreseeable to the defendant." *Id.* (quoting *Burger King*, 471 U.S. at 479).

In *Burger King*, the Supreme Court allowed a Florida court to exercise jurisdiction over a Michigan resident (a Burger King franchisee) who was sued by Burger King. 471 U.S. at 478. The Court noted that: (1) in negotiating the franchise agreement, the defendant dealt directly with the forum state office; (2) the contract contained a choice-of-law provision binding the

parties to forum state law; (3) the contract period was of a substantial duration, obligating the parties to a continuous relationship over a substantial period of time; (4) violation of the agreement caused a foreseeable risk of injury to the plaintiffs in the forum state; and (5) the defendant sent remunerations to plaintiffs in the forum. *Id.* at 479-82. Given these contacts, the Court concluded that the defendant "established a substantial and continuing relationship with Burger King's Miami headquarters." *Id.* at 487.

Here, the contracts state they were "made at Northbrook, Illinois." (Pl.'s Opp. Def. Mot. Dismiss at PX 7). Even assuming, *arguendo*, that this recitation of fact in the contract obligates the Court to treat it as an undisputed fact, it is not enough to support personal jurisdiction. *See Burger King*, 471 U.S. at 478. Thus, the Court must analyze the facts surrounding adoption of the contracts.

A comparison of this case to the facts in *Burger King* illuminates the deficiency of UL's case for personal jurisdiction over defendants. Unlike in *Burger King*, defendants here did not negotiate the contracts with UL's office in the forum state, but instead with UL's New York office. Moreover, in *Burger King*, the contract expressly contemplated continuing contacts between the defendants and the forum state, through payment of rents and royalties to the plaintiffs. *See Burger King*, 471 U.S. at 481. Here, while the contracts have language indicating that UL and defendants have certain rights and obligations that contemplate some future contacts between the parties after listing, the contracts do not suggest whether those contacts are to be through the New York or Illinois office. Indeed, UL does not even plead that the contracts contemplate future contracts with Illinois.

Moreover, the parties' actual course of dealing does not support a finding of specific jurisdiction. Defendants have never dealt directly with UL's Illinois office, they have only dealt

12

with UL's New York office. Finally, unlike in *Burger King*, in this case, there was no foreseeable risk of harm to the plaintiff in the forum state. The risk of harm caused by the underlying controversy is not to UL in Illinois but to defendants in New York. Thus, *none* of the *Burger King* factors favor a finding of personal jurisdiction.

Given this, this Court cannot find that defendants' sporadic contacts with Illinois (two virtually identical contracts, which were actually completed in New York) constitute sufficient minimum contacts with Illinois such that this Court can properly exercise personal jurisdiction over defendants.

## Conclusion

For the foregoing reasons, the Court grants defendants' motion to dismiss for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2) [doc. no. 34-1]. In all other respects, their motions are denied as moot [doc. no. 34-2]. This case is hereby terminated.

SO ORDERED. ENTER:

HON. RONALD A. GUZMAN
United States Judge